## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **IAN B. CORBIN,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 22-CV-4212** |
| | : | |
| **STEPHEN JAMES, *et al.*,** | : | |
| **Defendants.** | : | |

### MEMORANDUM

**GALLAGHER, J.**                                             **DECEMBER  29, 2022**

Plaintiff Ian B. Corbin, a convicted prisoner currently incarcerated at SCI Smithfield, filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983, asserting violations of his constitutional rights and related state law claims arising from his arrest and prosecution on drug charges.  Currently before the Court are Corbin's Complaint ((ECF No. 2 "Compl."), his Motion for Leave to Proceed *In Forma Pauperis*, and his prisoner trust fund account statement (ECF Nos. 1, 4).  Corbin asserts claims against the following Defendants: (1) the Commonwealth of Pennsylvania; (2) Lehigh County; (3) the City of Allentown; Lehigh County Common Pleas Court judges (4) Douglas Reichley and (5) Maria Dantos; (6) Northampton County Court of Common Pleas judge Samuel Murray; (7) Lehigh County District Attorney Joseph Stauffer; and Allentown Police Officers (8) Andrew Holveck, (9) Glenny, (10) Stephen James, (11) Richard Seltzer, (12) Jason Krasley, (13) Lobach, (14) Diehl, and (15) Graves.  (*Id.* at 2-4.)  Reichley, Dantos, Murray, Stauffer, and Police Officers Holveck, Glenny, James, Seltzer, Krasley, Lobach, Diehl, and Graves are named in their official and individual capacities.  For the following reasons, Corbin will be granted leave to proceed *in forma pauperis*.  His claims against the Commonwealth of Pennsylvania, Lehigh County, and individual Defendants Dantos, Reichley, Murray, and Stauffer, will be dismissed with prejudice.  His official capacity claims and his

claims asserting violations of the Thirteenth Amendment, 42 U.S.C. §§ 1981, 1987, 1988, and

1994, and federal and state criminal statutes will also be dismissed with prejudice.  Corbin's

claims against the City of Allentown will be dismissed without prejudice pursuant to 28 U.S.C. §

1915(e)(2)(B)(ii).  The Court will abstain from addressing the remainder of Corbin's claims

pursuant to *Younger v. Harris*, 401 U.S. 37 (1971), and the case will be stayed.

## I.      PROCEDURAL HISTORY AND FACTUAL ALLEGATIONS[1]

On June 3, 2022, Corbin was convicted on one charge of possession of drug

paraphernalia stemming from an August 1, 2019 arrest.  *See Commonwealth v. Corbin*, CP-39-

CR-3456-2019 (C.P. Lehigh).  The public docket reflects that Corbin appealed his conviction

and is currently awaiting a decision from the Pennsylvania Superior Court.  *Id.*  The gravamen of

Corbin's Complaint is that the arrest giving rise to the charges against him was conducted in

violation of his Fourth Amendment rights, that the ensuing search was illegal and produced

material that should not have been introduced into evidence at his criminal trial, and that his

continued efforts to obtain release on this basis have been thwarted by the concerted efforts of

the Defendants.  He claims that, as a result, he experienced a lengthy pretrial detention, and was

wrongly convicted and incarcerated.  (*See* Compl.)

Corbin alleges that on August 1, 2019, he and his mother, Brenda Corbin, left the home

they shared and entered a car owned by Corbin's mother.  (*Id.* at 4.)  Enroute to the Lehigh

Valley Mall, Defendants Glenny and Holveck allegedly stopped Corbin's vehicle and demanded

that both he and his mother exit the vehicle.  (*Id.*)  Glenny allegedly conducted a search of

---

[1] The allegations set forth in this Memorandum are taken from Corbin's Complaint.  (ECF No.
2.)  The Court adopts the pagination supplied by the CM/ECF docketing system.  Additionally,
the Court includes facts reflected in the publicly available state court docket, of which this Court
may take judicial notice.  *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir.
2006).

Corbin, and removed a wallet, keys, and cards from Corbin's pockets without probable cause or consent.  (*Id.* at 5.)  Holveck then allegedly searched the car owned by Corbin's mother, over her objection.  Holveck allegedly removed two cell phones from the car.  (*Id.*)  Following the search of his person and the car, Corbin was handcuffed.  (*Id.*)

Defendant James arrived on the scene and allegedly took possession of the items recovered during the search.  He then allegedly provided Corbin warnings required by *Miranda v. Arizona*, 384 U.S. 436 (1966), and advised Corbin that he had a search warrant.  Corbin allegedly asked to see the search warrant, but this request was denied.  Defendants Glenny and Holveck allegedly placed Corbin in the rear of a patrol car and returned to Corbin's residence. (*Id.*)  At the residence, Defendants James and Seltzer entered through the back door, using the keys obtained from Corbin.  (*Id.* at 6.)  Defendants Krasley, Diehl, Lobach, and Graves followed James and Seltzer into the house.  Corbin's mother allegedly arrived at the home and asked to see the search warrant.  (*Id.*)  This request was denied and she was instructed to remain in the back yard, in view of several neighbors, while the search proceeded.  (*Id.*)

Corbin was allegedly brought into the house, where he observed his belongings strewn through the house.  (*Id.*)  Defendant James allegedly requested Corbin's assistance with the search, which Corbin did not provide.  (*Id.*)  Corbin was removed from the home, placed in the back of the patrol car, and transported to the Allentown Police Station.  (*Id.*)  Approximately three hours after his arrival, Corbin alleges he was brought to an interview room, where Defendants Seltzer and James proceeded to question him, allegedly advising him that they had found contraband at Corbin's home in an effort to coerce him into assisting with the investigation.  (*Id.*)  Corbin alleges that he was then shown a warrant, arrested, and committed to the Lehigh County Jail.  (*Id.*)

Corbin was subsequently charged with two counts of possession with intent to deliver (Oxycodone and heroin), two counts of possession of a controlled substance (Oxycodone and heroin), and possession of drug paraphernalia. (*Id.* at 7.) Corbin alleges that the charges were based on evidence recovered from his residence, which establishes that there was no probable cause for the original traffic stop. (*Id.*) Corbin alleges, too, that he is an African American, and that he was, at the time of the search, sharing living space with a Caucasian female, later determined to be the owner of the drugs recovered. This person was not charged with any criminal offenses. Corbin alleges that Defendant James was aware of the presence of the female in the house and pursued charges against Corbin anyway. (*Id.*)

Following a preliminary hearing, on August 9, 2019, bail was set and Corbin was released from Lehigh County Jail. (*Id.* at 7.) The criminal charges against him were bound over for trial. (*Id.*)

On October 10, 2019, Corbin's bail was revoked by Defendant Dantos following Corbin's arrest in an unrelated matter.[2] (*Id.* at 8.) She allegedly subjected to him to detention under conditions of "no bail" in violation of his Fourth, Eighth, Thirteenth, and Fourteenth Amendment rights. (*Id.*) Defendant Stauffer allegedly took advantage of Corbin's detention to attempt to coerce him into entering into a plea agreement to conceal the misconduct of the police, prosecutors, and judges involved. (*Id.*) Corbin alleges that on numerous occasions he gave notice to the court of the injustice to which he was being subjected. (*Id.*) His efforts were unsuccessful.

On June 23, 2020, a bail hearing was held before Defendant Dantos and bail was reinstated. (*Id.*) On August 5, 2020, after 307 days in pretrial detention, Corbin was released on

---

[2] *See Commonwealth v. Corbin*, CP-39-CR-5062-2019 (C.P. Lehigh).

bail.  (*Id.*)  On April 29, 2021, a preliminary hearing was held before Defendant Reichley.  (*Id.*)

Corbin alleges that it was established at the hearing that the warrant at issue did not permit the

search of Corbin or his mother's vehicle, only their residence, and no Oxycodone was recovered

from the residence.  (*Id.* at 9.)  On May 25, 2021, Defendant Reichley dismissed the charges of

possession with intent to deliver (Oxycodone and heroin) and the charge of possession of a

controlled substance (Oxycodone).  (*Id.*)  On September 15, 2021, Defendant Reichley is alleged

to have failed to remedy the harm caused by the illegal use of Corbin's house keys to search his

residence and is also alleged to have suggested that the search of the home was undertaken

pursuant to Corbin's mother's consent.  (*Id.*)

Corbin's criminal trial commenced on May 31, 2022.  (*Id.* at 9.)  Corbin alleges that,

during the course of the trial, Defendant Reichley, who presided, refused to suppress the illegally

obtained evidence, and Defendant James, with the assistance of Defendant Stauffer, proffered

untrue testimony – specifically, that Defendant Stauffer advised Defendant James that it would

be permissible to enter Corbin's residence and perform a search.  (*Id.* at 10.)  On June 3, 2022, at

the close of the trial, Corbin was acquitted on a charge of possession of heroin and found guilty

on a charge of possession of drug paraphernalia.  (*Id.*)  On June 13, 2022, he was sentenced to a

term of imprisonment of six to twelve months.  (*Id.*)  Corbin's appeal of his conviction remains

pending.[3]  *See Commonwealth v. Corbin*, CP-39-CR-3456-2019 (C.P. Lehigh).

In short, Corbin alleges that the original traffic stop was illegal, that the search warrant

was procured and executed maliciously and without probable cause, and that this information

was illegally concealed, with the result that Corbin has been prosecuted, incarcerated, suffered

---

[3] Corbin is currently serving a term of imprisonment of five and one-half to twelve years arising
from an unrelated conviction.  *See Commonwealth v. Corbin*, CP-39-CR-5062-2019 (C.P.
Lehigh).

damage to his finances and reputation, and experienced mental anguish and emotional distress.

(Compl. at 10.)  Based on the foregoing, Corbin asserts claims pursuant to 42 U.S.C. § 1983

based on violations of his Fourth, Fifth, Sixth, Eighth, Thirteenth,[4] and Fourteenth Amendment

rights.  (*Id.* at 11.)  Corbin also alleges violations of several federal statutes, including 42 U.S.C.

§§ 1981, 1985, 1986, 1987, 1988, and 1994.[5]  (*Id.* at 1.)  He also asserts violations of

---

[4] The Thirteenth Amendment prohibits involuntary servitude, except as punishment for a crime for which a party has been duly convicted.  U.S. Const. amend. XIII.; *United States v. Kozminski*, 487 U.S. 931, 943 (1987).  In the context of a convicted prisoner, the courts have held that prisoners have no Thirteenth Amendment or liberty or property interest in payment for their work and may be lawfully compelled to work.  *See Dmytryszyn v. Hickenlooper*, 527 F. App'x 757, 760 (10th Cir. 2013) (nonprecedential) (inmate's Thirteenth Amendment and due process rights not violated when he was required to work for payment below minimum wage); *Serra v. Lappin*, 600 F.3d 1191, 1196 (9th Cir. 2010) ("A prisoner has no basis for asserting a violation of due process simply because he is made or allowed to work for low pay as punishment for a crime of which he was lawfully convicted."); *Piatt v. MacDougall*, 773 F.2d 1032, 1035 (9th Cir. 1985) (holding that the state does not deprive a prisoner of a constitutionally protected liberty interest by forcing him to work without pay); *Murray v. Mississippi Dep't Corr.*, 911 F.2d 1167, 1167-68 (5th Cir. 1990) (same).

 In the context of a pretrial detainee, the United States Court of Appeals for the Third Circuit has held that such prisoners may be compelled to perform only certain services. *Tourscher v. McCullough*, 184 F.3d 236, 242 (3d Cir. 1999) (holding that, while a pretrial detainee could be compelled to perform "some service" in the prison, such as "general housekeeping responsibilities" consistent with the Due Process Clause, dismissal of complaint before service was premature where inmate, who was held for a time as a pretrial detainee, alleged that he was required to work in the prison cafeteria in violation of the Thirteenth Amendment.).

 Although Corbin refers to "involuntary servitude" and "peonage" throughout his Complaint, and asserts violations of his Thirteenth Amendment rights, he does not include factual allegations in his Complaint that he was compelled to work as a detainee or that otherwise appear to relate to a Thirteenth Amendment violation.  (*See* Compl.)  Thus, whether his claim relates to the time he was a pretrial detainee or a convicted prisoner, his allegations fail to set forth a plausible claim under the Thirteenth Amendment based on involuntary servitude. This claim will be dismissed.

[5] 42 U.S.C § 1981 prohibits racial discrimination in contracts.  Corbin does not include any allegations suggesting that any contractual relations exist among the parties.  Thus, it does not appear that § 1981 is applicable.  42 U.S.C § 1987 does not give rise to a private cause of action. *See Wolfe v. Beard*, No. 10-2566, 2010 WL 5173199, at *12 (E.D. Pa. Dec. 9, 2010) ("Section 1987 empowers federal officials to prosecute violations of certain statutorily enumerated crimes. . . . [Section] 1987 does not provide a private right of action.") (citations omitted).  42 U.S.C § 1988, which provides for an award of attorneys' fees in certain circumstances, does not provide a basis for an independent right of action.  *See Vecchia v. Town of Hempstead*, 927 F. Supp 579,

unidentified federal and state criminal statutes,[6] the Pennsylvania Constitution,[7] 28 U.S.C. §

453,[8] and the Rules of Professional Conduct governing attorneys and the Pennsylvania Judicial

---

580-81 (E.D.N.Y 1996) (citing *North Carolina Dep't of Transp. v. Crest Street Comm. Council, Inc.*, 479 U.S. 6, 14 (1986).  42 U.S.C. § 1944 prohibits peonage and Corbin's § 1944 claim fails for the same reason as his Thirteenth Amendment claim.  *See e.g., Amnesty Am. v. Cty. of Allegheny*, 822 F. Supp. 297, 300 (W.D. Pa. 1993) (construing and disposing of claims under Thirteenth Amendment and § 1944 together).  These claims will be dismissed.

[6] The allegation that criminal statutes were violated is conclusory and not plausible for this reason alone.  Moreover, criminal statutes generally do not give rise to a basis for civil liability.  *See Brown v. City of Philadelphia Office of Human Res.*, 735 F. App'x 55, 56 (3d Cir. 2018) (*per curiam*) ("Brown alleges that the defendants violated various criminal statutes, but most do not provide a private cause of action."); *Brown v. U.S. Dist. Ct. for the E. Dist. of Pa.*, No. 18-747 (E.D. Pa.) (Apr. 9, 2018 Order at 6 (dismissing claims under 18 U.S.C. § 1589 as "meritless and frivolous")), *aff'd*, 740 F. App'x 239, 240 (3d Cir. 2018) (*per curiam*); *Brown v. Progressive Specialty Ins. Co.*, 763 F. App'x 146, 147 (3d Cir. 2019) (*per curiam*) ("Brown's mere citation to various constitutional provisions cannot transform his state law claims into causes of action 'arising under' the Constitution.").  Indeed, the United States Supreme Court has stated that, unless specifically provided for, federal criminal statutes rarely create private rights of action.  *Nashville Milk Co. v. Carnation Co.*, 355 U.S. 373, 377 (1958) (stating that where a statute "contains only penal sanctions for violation of it provisions; in the absence of a clear expression of congressional intent to the contrary, these sanctions should under familiar principles be considered exclusive, rather than supplemented by civil sanctions of a distinct statute"); *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994) ("We have been quite reluctant to infer a private right of action from a criminal prohibition alone.").  The fact that a statute has been violated and some person harmed does not automatically give rise to a private cause of action for the injured person.  *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979); *Cannon v. University of Chicago*, 441 U.S. 677, 689 (1979).  These claims will be dismissed.

[7] There is no private right of action for damages under the Pennsylvania Constitution, therefore these claims are dismissed.  *See Plouffe v. Cevallos*, 777 F. App'x 594, 601 (3d Cir. 2019) ("[N]or is there a private right of action for damages under the Pennsylvania Constitution"); *Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*, 442 F. App'x 681, 687 (3d Cir. 2011) ("No Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution.").

[8] 42 U.S.C. 453, which requires federal judges to swear an oath of allegiance to the Constitution, is clearly inapplicable in this case, in which claims are asserted against state court judges.  Section 453 does not, in any event, create a substantive cause of action for violation of the required oath.  *Lewis v. Green*, 629 F. Supp. 546, 554 n.14 (D.D.C. 1986).  This claim will be dismissed.

Code of Conduct.[9]  (*Id.*)  He also includes a claim for malicious prosecution against Defendant Stauffer.  (*Id.* at 15.)

Corbin requests a preliminary injunction in the form of an award of money and an Order from this Court assist him in obtaining materials from the underlying criminal proceedings, a declaratory judgment as to all suitable matters, and an award of compensatory and punitive damages.  (*Id.* at 21.)  He also requests the criminal prosecution of Defendants James, Holveck, Glenny, Seltzer, Krasley, Lobach, Diehl, Graves, Stauffer, Dantos, Murray, and Reichley.[10]  (*Id.* at 11-18.)

## II.    STANDARD OF REVIEW

The Court will grant Corbin leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[11]  Accordingly, his Complaint is

---

[9] "Violation of the Rules of Professional Conduct does not, without more, mean the conduct is actionable or otherwise give rise to a cause of action against a lawyer."  *Deitrick v. Costa*, No. 06-1556, 2015 WL 1605700, at *17 (M.D. Pa. Apr. 9, 2015) (citing *Maritrans GP, Inc. v. Pepper, Hamilton & Scheetz*, 602 A.2d 1277, 1284 (Pa. 1992)).  In any event, both the Rules of Professional Conduct and the Pennsylvania Judicial Code of Conduct implicate state law and do not give rise to a federal civil rights claim.  *Accord Canton v. Harris*, 489 U.S. 378, 387 (1989) (holding that state law negligence allegation cannot form basis of 1983 liability).  These claims will be dismissed.

[10] "A private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."  *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (finding that a citizen lacks standing to contest prosecutorial policies "when he himself is neither prosecuted nor threatened with prosecution") (citations omitted).  Moreover, "it is well-settled that the decision whether to file criminal charges against an individual lies within the prosecutor's discretion, and private citizens do not have a constitutional right to compel criminal prosecution."  *Lewis v. Jindal*, 368 F. App'x 613, 614 (5th Cir. 2010) (citations omitted); *Smith v. Friel*, No. 19-943, 2019 WL 3025239, at *4 (M.D. Pa. June 4, 2019), *report and recommendation adopted*, 2019 WL 3003380 (M.D. Pa. July 10, 2019) (collecting cases and stating "courts have long held that a civil rights plaintiff may not seek relief in civil litigation in the form of an order directing the criminal prosecution of some third parties").  Because Corbin's request that the named Defendants be prosecuted is not relief this Court can grant under § 1983 for civil rights violations, the claim will be dismissed.

[11] Because he is a prisoner, the PLRA requires Corbin to pay the full amount of the filing fee in installments regardless of the outcome of this case.

subject to screening pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  That provision of the Prison

Litigation Reform Act requires the Court to dismiss the supplemented Complaint if it fails to

state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by

the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure

12(b)(6), *see Tourscher*, 184 F.3d at 240, which requires the Court to determine whether the

complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  "At this

early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as

true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that]

complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'"

*Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d

768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.

As Corbin is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8

F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d

Cir. 2013)).

## III.    DISCUSSION

The vehicle by which federal constitutional claims may be brought in federal court is 42

U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right

secured by the Constitution and laws of the United States, and must show that the alleged

deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S.

42, 48 (1988). "A defendant in a civil rights action must have personal involvement in the

alleged wrongs" to be liable.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988);

*Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular

'allegations of personal direction or of actual knowledge and acquiescence.'") (quoting *Rode*,

845 F.2d at 1207).  *See Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

### A.        Claims for Injunctive and Declaratory Relief

In his prayer for relief, Corbin requests injunctive relief in the form of an immediate monetary award intended to begin to address his injuries pending the outcome of this litigation, the intervention of this Court to assist Corbin in obtaining "all necessary discovery materials," presumably materials used in the underlying criminal case, and a declaratory judgment in his favor as to all suitable matters.  (Compl. at 21.)

### 1.        Injunctive Relief

Corbin's request for money damages does not support a request for an injunction.  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008); *Fulton v. City of Philadelphia*, 922 F.3d 140, 152 (3d Cir. 2019).  If the request for injunctive relief centers on the ownership of money, any injury cannot plausibly be deemed to be irreparable.  Corbin's request for an injunction awarding him immediate money damages must be dismissed.  *See Tantopia Franchising Co., LLC v. W. Coast Tans of PA, LLC*, 918 F. Supp. 2d 407, 417 (E.D. Pa. 2013) ("Irreparable harm is injury that cannot adequately be compensated by monetary damages.")

Corbin's request for the Court's intervention to assist him in obtaining documents from the underlying criminal proceedings does not allege why he requires access to the materials described, but the Court broadly construes the request as relating to Corbin's efforts to challenge the underlying criminal proceedings.  However, in *Younger v. Harris*, 401 U.S. 37 (1971), the

United States Supreme Court "established a principle of abstention when federal adjudication would disrupt an ongoing state criminal proceeding."  *Yang v. Tsui*, 416 F.3d 199, 202 (3d Cir. 2005) (discussing *Younger*).  *Younger* requires this Court to abstain from considering this request.[12]

### 2.    Declaratory Relief

Corbin does not identify the nature of the declaratory relief that he seeks, but construing his allegations liberally, he appears to seek a declaration that the conduct of the Defendants violated his constitutional rights.  This request for relief is improper and will be dismissed with prejudice.  Declaratory relief is unavailable to adjudicate past conduct.  *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another."); *see also Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) (*per curiam*) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct.").  A declaratory judgment is also not "meant simply to proclaim that one party is liable to another."  *Corliss*, 200 F. App'x at 84 (*per curiam*); *see also Taggart v. Saltz*, No. 20-3574, 2021 WL 1191628, at *2 (3d Cir. Mar. 30, 2021) (*per curiam*) ("A declaratory judgment is available to define the legal rights of the parties, not to adjudicate past conduct where there is no threat of continuing harm.").

### B.    Claims Against the Commonwealth of Pennsylvania

Corbin asserts claims against the Commonwealth of Pennsylvania for deprivation of his rights, conspiracy to interfere with his civil rights, neglect to prevent conspiracy to interfere with his civil rights, barratry, peonage, and involuntary servitude for which he requests an award of

---

[12] The Court addresses the impact of *Younger* and why it requires abstaining from considering other claims asserted in Corbin's Complaint in more detail below.  *See infra*, Section III.F.

money damages.  (Compl. at 20.)  However, states are not considered "persons" for purposes of § 1983.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66 (1989).  Furthermore, the Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages.  *See Pennhurst State Sch. And Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003).  The Commonwealth of Pennsylvania has not waived that immunity.  *See* 42 Pa. Cons. Stat. § 8521(b).  Accordingly, the claims for money damages that Corbin seeks to assert against the Commonwealth of Pennsylvania are dismissed with prejudice.

### C.      Municipal Liability Claims

Corbin asserts claims against the City of Allentown and Lehigh County.  (Compl. at 18, 19.)  To plead a basis for liability against a municipal entity such as the City of Allentown or Lehigh County under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights.  *See Monell*, 436 U.S. 658, 694 (1978).  "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was."  *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009).  "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'"  *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)).  "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'"  *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).  For a custom to be the proximate cause of an injury, a plaintiff must establish that the Defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [plaintiff's]

injury." *Id.* (internal quotations and alterations omitted).  Allegations that simply paraphrase the

standard for municipal liability are too vague and generalized to support a plausible claim.  *See,*

*e.g.*, *Szerensci v. Shimshock*, No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021)

("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is

insufficient to state a claim for § 1983 liability under *Monell*.") (citing cases).

　　　　A plaintiff may also state a basis for municipal liability by "alleging failure-to-

supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to

deliberate indifference to the constitutional rights of those affected."  *Forrest v. Parry*, 930 F.3d

93, 106 (3d Cir. 2019).  "This consists of a showing as to whether (1) municipal policymakers

know that employees will confront a particular situation, (2) the situation involves a difficult

choice or a history of employees mishandling, and (3) the wrong choice by an employee will

frequently cause deprivation of constitutional rights."  *Id.*  As the United States Court of Appeals

recently stated:

> If the alleged policy or custom at issue is a failure to train or supervise (as it is
> here), the plaintiff must show that this failure "amounts to 'deliberate
> indifference' to the rights of persons with whom [the municipality's] employees
> will come into contact."  *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir.
> 2014) (quoting *Carter v. City of Phila.*, 181 F.3d 339,357 (3d Cir. 1999)).
> "Ordinarily," this requires a plaintiff to identify a "'pattern of similar
> constitutional violations by untrained employees'" that "puts municipal
> decisionmakers on notice that a new program is necessary."  *Id.* at 223 (quoting
> *Connick v. Thompson*, 563 U.S. 51, 62 (2011)).  Otherwise, the plaintiff needs to
> show that failure to provide the identified training would "likely . . . result in the
> violation of constitutional rights" — i.e., to show that "the need for more or
> different training [was] so obvious."  *City of Canton v. Harris*, 489 U.S. 378, 390
> (1989).

*Johnson v. City of Phila.*, 975 F.3d 394, 403 (3d Cir. 2020).

　　　　With respect to his claims against the City of Allentown, Corbin's allegations fall into the

failure to train category.  He alleges that the City of Allentown failed to train its officers as to the

limits of a "Terry search" and the legal and proper means of executing a search warrant.

(Compl. at 18-19.)  Additionally, the City is alleged to have failed to have in place a policy pertaining to mandatory use of body camera technology.  (*Id.* at 19.)  Also, the City is also alleged to have failed to properly supervise its officer so as to prevent conspiratorial acts that impact negatively on the administration of justice.  (*Id.*)  These allegations do not state a plausible municipal liability claim against the City.  Corbin does not allege a factual pattern of similar constitutional violations by other officers, or facts that would support a plausible conclusion that the City was on notice that a new program was necessary.  He also does not allege that the need for more or different training was so obvious that the City of Allentown should have recognized it.  *See Johnson*, 975 F.3d at 403 (quotations omitted).  As a result, his claim against the City of Allentown will be dismissed.

With respect to his claims against Lehigh County, Corbin alleges that the County is liable for the acts of all of the individual Defendants, and the City of Allentown.  (Compl. at 19.)  He also alleges that the County failed to supervise, control, and discipline the other named Defendants.  (*Id.* at 21-22.)  Corbin also claims that the County secured a pecuniary benefit by pursuing criminal proceedings against him by employing unjust and unlawful acts.  *(Id.* at 22.)

Although located in Lehigh County, Allentown is a political subdivision of the Commonwealth of Pennsylvania, not of Lehigh County.  *See Hall v. Weaver*, No. 10-101, 2011 WL 1136838, at *1 n.1 (W.D. Pa. Mar. 8, 2011), *report and recommendation adopted*, 2011 WL 1114248 (W.D. Pa. Mar. 25, 2011) (stating that municipalities located in Allegheny County were not political subdivisions of Allegheny County, but rather were political subdivisions of the Commonwealth).  Accordingly, any assertions of liability against Lehigh County based on the actions of the City of Allentown police officers identified as Defendants is not plausible.  Claims against Lehigh County based on Stauffer's actions are also not plausible.  As a prosecutor, Stauffer is employed by the Lehigh County District Attorney's Office and the United States

Court of Appeals for the Third Circuit has held that district attorneys' offices in Pennsylvania are not entities subject to suit under § 1983. *See Reitz v. Cty. of Bucks*, 125 F.3d 139, 148 (3d Cir. 1997) (holding that "the Bucks County District Attorney's Office is not an entity for purposes of 1983 liability"). As judges, Reichley, Dantos, and Murray are employees of the Commonwealth's Unified Judicial System. Thus, their actions also cannot be attributable to Lehigh County. Because Corbin has not alleged that any employee of Lehigh County violated his constitutional rights, and his allegation that the County secured a pecuniary benefit is conclusory, his claim against Lehigh County is not plausible and will be dismissed with prejudice.

### D.      Claims Against Judges Reichley, Dantos, and Murray

Corbin asserts individual capacity claims against Defendant Dantos based on her revocation of his bail following his arrest in an unrelated case and her decision to continue his pretrial detention under conditions of "no bail." (Compl. at 16.) He asserts claims against Defendant Reichley, who he alleges in the course of pre-trial hearings and Corbin's criminal trial, allowed illegally obtained materials to be introduced into evidence. (*Id.* at 18.) Corbin asserts claims against Defendant Murray based on Murray's participation as a judge in criminal proceedings against Corbin in Northampton County, which Corbin alleges resulted in his lengthy pretrial detention in Lehigh County. (*Id.* at 17.)

Judges are entitled to absolute immunity from civil rights claims that are based on acts or omissions taken in their judicial capacity, so long as they do not act in the complete absence of all jurisdiction. *See Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978); *Harvey v. Loftus*, 505 F. App'x 87, 90 (3d Cir. 2012) (per curiam); *Azubuko v. Royal*, 443 F.3d 302, 303-04 (3d Cir. 2006) (per curiam). An act is taken in a judge's judicial capacity if it is "a function normally performed by a judge." *Gallas v. Supreme Ct. of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000).

Moreover, "[g]enerally . . . 'where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes.'" *Figueroa v. Blackburn*, 208 F.3d 435, 443-44 (3d Cir. 2000) (quoting *Barnes v. Winchell*, 105 F.3d 1111, 1122 (6th Cir. 1997)).

Corbin concedes that the Defendants were acting in the course and scope of their judicial duties when they engaged in the described conduct.  Indeed, the conduct described is undeniably judicial in nature.  Moreover, there is no suggestion that either Defendant acted in the complete absence of all jurisdiction.  Because entertaining and resolving motions, decisions regarding bail, and presiding over trials are functions normally performed by a judge, they enjoy absolute immunity for claims based on that conduct.  Accordingly, Corbin's claims against them must be dismissed with prejudice.[13]

### E.    Claims Against District Attorney Stauffer

Corbin asserts a laundry list of claims against District Attorney Stauffer, including deprivation of rights under color of law, conspiracy against rights, neglect to prevent conspiracy, search without warrant, criminal trespass, hindering apprehension or prosecution, official oppression, criminal coercion, ethnic intimidation, harassment, false imprisonment, malicious prosecution, and barratry.  (Compl. at 15.)  These claims are based on Stauffer's representation of the Commonwealth in the criminal proceedings against Corbin.  He alleges that Defendant

---

[13] Corbin also asserts official capacity claims against Judges Dantos, Reichley, and Murray, who are employees of the Lehigh (Dantos and Reichley) and Northampton (Murray) County Courts of Common Pleas, respectively.  Claims against these Defendants in their official capacities are indistinguishable from claims against their employing entities.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)).  "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.*  Courts of Common Pleas, as part of Pennsylvania's unified judicial system, share in the Commonwealth's Eleventh Amendment immunity.  *See Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 241 (3d Cir. 2005).  Thus, Corbin's official capacity claims against Dantos, Reichley, and Murray are also barred by the Eleventh Amendment.

Stauffer (who prosecuted the case) sought to coerce Corbin into entering a plea agreement and conspired with Defendant James to introduce perjured testimony and Corbin's criminal trial.  (*Id.* at 8, 10.)

Prosecutors are entitled to absolute immunity from liability under § 1983 for acts that are "intimately associated with the judicial phase of the criminal process" such as "initiating a prosecution and . . . presenting the State's case."  *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976).  Moreover, District Attorneys and other supervisory prosecutors are likewise entitled to absolute immunity from claims based on their role in pursuing a prosecution on behalf of the Commonwealth.  *See Van de Kamp v. Goldstein*, 555 U.S. 335, 348-49 (2009).  Because all of the conduct alleged to have been engaged in by Stauffer occurred in the course of his representation of the Commonwealth in Corbin's criminal proceedings, he is entitled to absolute immunity and the claims against him must be dismissed with prejudice.[14]

**F.      Claims Against Allentown Police Officers**

Corbin asserts official capacity and individual liability claims against the eight named Allentown police officers.  However, claims against these Defendants in their official capacity are indistinguishable from claims against their employing entity, here the City of Allentown.  *See Graham*, 473 U.S. at 165-66.  Therefore, to the extent these Defendants are sued in their official capacities, any such claims are dismissed with prejudice as duplicative of the claims against the City of Allentown.  *See Stanek v. St. Charles Cmty. Unit Sch. Dist. No. 303*, 783 F.3d 634, 644

---

[14] Corbin also asserts an official capacity claim against Defendant Stauffer.  However, as a prosecutor, Stauffer is employed by the Lehigh County District Attorney's Office and the United States Court of Appeals for the Third Circuit has held that district attorneys' offices in Pennsylvania are not entities subject to suit under § 1983.  *See Reitz*, 125 F.3d at 148  (holding that "the Bucks County District Attorney's Office is not an entity for purposes of 1983 liability.")  Thus, Corbin's official capacity claim against Stauffer is not plausible and will be dismissed with prejudice.

(7th Cir. 2015) ("The district court correctly dismissed these defendants in their official capacity because the Staneks also sued the District."); *Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004) ("The district court correctly held that the § 1983 claim against Martin in his official capacity as Superintendent is essentially a claim against the Board and thus should be dismissed as duplicative."); *see also Graham*, 473 U.S. at 166 ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.")  These claims will be dismissed with prejudice.

With respect to his individual liability claims against the officers, Corbin alleges that the officers engaged in illegal searches of his person, his mother's car, and his residence, and that the illegal searches produced evidence that was wrongly used against him at trial resulting in his conviction, thereby violating his constitutional rights.  (Compl. at 11-15.)  In *Younger*, 401 U.S. 37, the United States Supreme Court "established a principle of abstention when federal adjudication would disrupt an ongoing state criminal proceeding."  *Yang v. Tsui*, 416 F.3d 199, 202 (3d Cir. 2005) (discussing *Younger*).  "*Younger* abstention is only appropriate in three types of underlying state cases: (1) criminal prosecutions, (2) civil enforcement proceedings, and (3) civil proceedings involving orders in furtherance of the state courts' judicial function."  *PDX N., Inc. v. Comm'r New Jersey Dep't of Labor & Workforce Dev.*, 978 F.3d 871, 882 (3d Cir. 2020) (internal quotations omitted).

*Younger* abstention "is premised on the notion of comity, a principle of deference and 'proper respect' for state governmental functions in our federal system."  *Evans v. Court of Common Pleas, Delaware Cty., Pa.*, 959 F.2d 1227, 1234 (3d Cir. 1992).  Comity concerns are especially heightened when the ongoing state governmental function is a criminal proceeding. *Id.*  The specific elements that warrant abstention are that "(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state

interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims." *Schall v. Joyce*, 885 F.2d 101, 106 (3d Cir. 1989).  Exception to the *Younger* doctrine exist where irreparable injury is "both great and immediate," where the state law is "flagrantly and patently violative of express constitutional prohibitions," or where there is a showing of "bad faith, harassment, or . . . other unusual circumstance that would call for equitable relief." *Younger*, 401 U.S. at 46, 53-54.  These exceptions are to be narrowly construed.  *Hall v. Pennsylvania*, No. 12-2373, 2012 WL 5987142, *2 (M.D. Pa. 2012) (citing *Loftus v. Twp. of Lawrence Park*, 764 F. Supp. 354, 357 (W.D. Pa. 1991)).

The *Younger* requirements are clearly met in this case for the claims against the Allentown police officers.  First, the publicly available docket from the Court of Common Pleas of Lehigh County clearly reflects that Corbin appealed his conviction and is currently awaiting a decision by the Pennsylvania Superior Court.  Second, the state proceedings implicate the important interest of enforcing the Commonwealth's criminal laws.  Third, the appellate proceedings provide Corbin an adequate opportunity to argue in the state forum that the alleged misconduct by the officers resulted in his arrest and prosecution in a manner that violates his constitutional rights.[15]  Further, there is nothing in the Complaint to indicate that Corbin's claims fall within any of the narrow exceptions to the *Younger* doctrine.  Accordingly, it is appropriate to abstain from entertaining Corbin's remaining claims against the Allentown police officers out of deference to the state judicial process.[16]  *See Wallace v. Kato*, 549 U.S. 384, 393-94 (2007)

---

[15]  This Court may assume that the state procedures will afford Corbin an adequate remedy.  *See Kelm v. Hyatt*, 44 F.3d 415, 420 (6th Cir. 1995) (citing *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987)) ("Initially, we must presume that the state courts are able to protect the interests of the federal plaintiff.").

[16]  Corbin asserts claims pursuant to 42 U.S.C. §§ 1985 and 1986 (*see* Compl. at 1).  Those claims are also subject to *Younger* abstention.  *See e.g.*, *Meador v. Paulson*, 385 F App'x 613 (8th Cir. 2010) (concluding that district court did not abuse its discretion in abstaining from resolving claims against a state prosecutor and state court judge pursuant to § 1985 under

("If a plaintiff files a false-arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended.  If the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, *Heck* will require dismissal; otherwise, the civil action will proceed, absent some other bar to suit." (citations omitted)); *see also Ellis v. Mondello*, Civ. A. No. 05-1492, 2005 WL 1703194, at *3 (D.N.J. 2005) ("[A]ssuming the criminal action is still pending in a state trial or appellate court, review of the state court proceedings would be barred; a district court cannot interfere in a pending state criminal action in order to consider issues that a plaintiff can raise there.").

## IV.    CONCLUSION

For the reasons stated, Corbin will be granted leave to proceed *in forma pauperis*.  His claims against the Commonwealth of Pennsylvania, Lehigh County, and individual Defendants Dantos, Reichley, Murray, and Stauffer will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  His official capacity claims and his claims asserting violations of the Thirteenth Amendment, 42 U.S.C. §§ 1981, 1987, 1988, and 1994, and federal and state criminal statutes will also be dismissed with prejudice and with no leave granted to amend because amendment would be futile.  *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002).  Corbin's claims against the City of Allentown will be dismissed without prejudice

---

*Younger*); *Streater v. Paulson*, 217 F.3d 846 (9th Cir. 2000) (affirming district's application of *Younger* to state prisoner's claims under §§ 1985, 1986); *Brandy Found. Animal Sanctuary v. San Bernardino Cty.*, No. 08-02292, 2008 WL 11409512, at *3-*4 (C.D. Cal. June 20, 2008) (ordering a stay, on *Younger* abstention grounds, of the portions of the plaintiffs' § 1983 claims that concerned search and seizure, § 1985 conspiracy claims, and civil RICO claims, on the grounds that all of these claims were likely to interfere with ongoing criminal prosecutions).

pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  The Court will abstain from addressing the remainder

of Corbin's claims pursuant to *Younger v. Harris*, 401 U.S. 37 (1971), and the case will be

stayed. Corbin may move to reopen this action following the resolution of his pending appeal.

An appropriate Order follows.

**BY THE COURT:**

*/s/ John M. Gallagher*
**JOHN M. GALLAGHER, J.**